# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0002
Filed April 1, 2026

———————————

**In the Interest of A.M., Minor Child,**

**A.S., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Linn County,
The Honorable Cynthia S. Finley, Judge.

———————————

**AFFIRMED**

———————————

Ellen Ramsey-Kacena, Assistant Public Defender,
Cedar Rapids, attorney for appellant father.

Brenna Bird, Attorney General, and Tamara Knight,
Assistant Attorney General, attorneys for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and
guardian ad litem for minor child.

———————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

1

**BADDING, Judge.**

A father appeals the termination of his parental rights to an infant son—born in 2025—under Iowa Code section 232.116(1)(h) (2025).[1] Although he agreed that he was unable to care for the child at the time of the termination hearing, the father argues that would change with more time and services. He also contends that termination is not in the best interests of the child. Our review is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

The child was placed in the temporary custody of the Iowa Department of Health and Human Services in March 2025, having been removed from his mother just three days after birth. One month later, the infant was adjudicated as a child in need of assistance. The father first learned about the child when a sheriff's deputy served him notice of the juvenile court proceedings. He lacked housing at the time, traveling frequently for his job as an ironworker. He was also struggling with methamphetamine.

After genetic testing confirmed his paternity, the father began to participate in services through the department. He obtained a substance-use evaluation and started intensive outpatient treatment, but he was unsuccessfully discharged in July. Court-ordered drug tests—for which the father mostly failed to appear—were positive for methamphetamine in August, October, and November. And the father admitted to ongoing drug use at a December termination hearing. When asked whether he could care for his son, the father responded: "Honestly, no."

---

[1] The juvenile court also terminated the parental rights of the child's mother, but she does not appeal.

On appeal, the father contends that the department failed to make reasonable efforts to unite him with the child. *See* Iowa Code § 232.102(4)(b), (6) (Supp. 2025).[2] He alleges that he was not connected with a family-centered services worker until mid-October, delaying him from securing an apartment and completing parenting classes. Because the father never objected to the adequacy of the department's services before the termination hearing, his challenge comes too late. *In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017). But even if his claim were timely, we would find no lack of reasonable efforts here. The father received evaluations, testing, and treatment for his substance use. And he testified that he was grateful for the several housing referrals his case worker provided. His failure to achieve stability was not for lack of the department's help.

The father also asserts that a six-month extension would allow him time to make the progress necessary to safely parent the child. However, we cannot find that the barriers to reunification would "no longer exist at the end of the additional six-month period." *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). The father admitted using methamphetamine just two days before the termination hearing, even while he was wearing a sweat patch. And although he had re-enrolled in outpatient treatment, his drug counselor reported inconsistent attendance.

---

[2] The father frames his reasonable-efforts argument as a challenge to the State's proof under section 232.116(1)(h). While compliance with the reasonable-efforts mandate "is not viewed as a strict substantive requirement" for termination of parental rights, "the State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *L.T.*, 924 N.W.2d at 527 (cleaned up). *But see In re F.W.*, No. 24-0111, 2024 WL 2044610, at *5 (Iowa Ct. App. May 8, 2024) (Tabor, P.J., concurring) (questioning why reasonable efforts are not a "strict substantive requirement" for termination since section 232.102(4)(b) requires such efforts in every case unless waived).

With no sign in this record that the father is on track toward sobriety, we decline to extend the child's time in limbo.

That leaves us with the father's final argument: that termination is contrary to the child's best interests. Giving "primary consideration to the child's safety," to his "long-term nurturing and growth," and to his "physical, mental, and emotional" needs, we disagree. Iowa Code § 232.116(2). Although the father testified that he wanted to become a safe and sober caretaker, his "journey is likely [to be] a long one and it is far from complete." *L.M.*, 904 N.W.2d at 840. We cannot deprive this child of the permanency he deserves on the hope that the father will be able to parent him in the future. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). Even though a plan for adoption was not yet in place at the time of the hearing, we find that termination is the better path to long-term safety and stability. *See In re N.F.*, 579 N.W.2d 338, 342 (Iowa Ct. App. 1998) (explaining a concurrent plan for adoption "is not a precondition to termination").

**AFFIRMED.**